### In re MICHIGAN FURNITURE CO.

### Ex parte NATHAN.

(District Court, S. D. New York. April 8, 1918.)

BANKRUPTCY ⚙188(1)—CREDITORS—TRADERS' DEBTS.

    As the New York Lien Law (Consol. Laws, c. 33) and Personal Property Law (Consol. Laws, c. 41) do not extend to choses in action, and as the doctrine of reputed assets does not apply to traders' debts, a creditor of a New York bankrupt, which sold on credit, taking back chattel mortgages on the goods sold, and to secure loans, etc., assigned such accounts

and chattel mortgages, on its books marking the accounts as assigned, is entitled to the proceeds of such accounts, collected within four months by the bankrupt and used in its business.

In Bankruptcy. In the matter of the bankruptcy of the Michigan Furniture Company. The petition of Pincus Nathan, claiming from the trustee collections upon certain accounts assigned by the bankrupt as security, was granted, and one Marvin, as trustee in bankruptcy, petitions to review. Petition denied, and order affirmed.

Petition by Marvin, trustee in bankruptcy, to review an order of a referee in bankruptcy. The case was this: The bankrupts were traders in household furniture, selling to their customers in part on credit, and taking back chattel mortgages on the goods sold, which were properly filed as required by section 230 of the New York Lien Law. Some of their furniture the bankrupts bought of Pincus Nathan, and also borrowed of him money in substantial amounts. It did not appear certainly whether the loans were only credit for the purchases or separate transactions, but the last may be assumed. To secure himself for each loan, Pincus Nathan not only got notes or postdated checks, but assignments of the bankrupt's chattel mortgages, in amount three or four times the face of the loans. The documents the bankrupts delivered to Pincus Nathan, and appropriately marked on their books the accounts so assigned; but they collected the accounts themselves, without notice of the assignments to the mortgagors, and mingled the cash in their own bank account, from which they drew generally for the purposes of their business.

Pincus Nathan claimed from the trustee the collections upon the assigned accounts made within four months as security for his debt, and the referee awarded them to him. The trustee appealed by petition to review from that order.

William J. Carey, of New York City, for trustee.
Herbert A. Wolff and Morris L. Ernst, both of New York City, for Nathan.

LEARNED HAND, District Judge. The New York chattel mortgage statute (Lien Law, § 230) does not apply to choses in action, nor does the statute regulating charges other than mortgages (Personal Property Law, § 36). Each is confined to "goods and chattels." In general, the doctrine of reputed ownership, which in England extends to traders' debts (21 Jac. 1, c. 19; Ryall v. Rowles, 1 Ves. Sr. 348), does not in the United States include any kind of choses in action (Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339; Clark v. Iselin, 21 Wall. 360, 369, 22 L. Ed. 568; Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; Stackhouse v. Holden, 66 App. Div. 423, 73 N. Y. Supp. 203).

The appellant (petitioner to review) does not question this general doctrine, but relies upon the fact that the bankrupts had the right to use the proceeds in their own business. This, indeed, avoids a mortgage or charge on chattels in New York. Griswold v. Sheldon, 4 N. Y. 581, Edgell v. Hart, 9 N. Y. 213, 59 Am. Dec. 532. There are many subsequent cases, among the last of which are Skilton v. Codington, 185 N. Y. 80, 90, 77 N. E. 790, 113 Am. St. Rep. 885, and Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083. Indeed, the filing of the chattel mortgage will not prevail to save the lien, in the face of the mortgagor's right of disposal. Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Southard v. Benner, 72 N. Y. 424.

I have found no New York case in which the question here at issue arises, except Stackhouse v. Holden, supra, which was by a. divided court; but upon principle there can be no doubt that there should be no distinction between the reputed ownership arising only from possession and that arising from the right to dispose of the property charged. The origin of the doctrine rested upon the putative credit which the possessor was enabled to enjoy by the display of the goods. Lord Hardwicke, in Ryall v. Rowles, supra, extended this to traders' debts; but it has gone no further in England, even under the Bankruptcy Act (46–47 Vict. c. 52, § 44), and it is at least questionable whether, in the absence of some specific deception, traders' debts are a source of putative credit. However that may be, the rule based upon the possessor's power of disposal in New York arose as an application of the doctrine of reputed ownership of a stock of goods, and should be as much so confined as that doctrine in its other applications. How far it accords with present commercial habits I have, of course, nothing to say.

Petition denied; order affirmed.